**KRONENBERGER ROSENFELD, LLP**

Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Virginia A. Sanderson (Bar No. 240241)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:  (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
ginny@KRInternetLaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DIABLO MEDIA, LLC**, a Colorado limited liability company,<br><br>          Plaintiff,<br><br>     v.<br><br>**REPLY! INC.**, a Delaware corporation,<br><br>          Defendant. | Case No. 4:13-cv-05382<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

1    Plaintiff Diablo Media, LLC, a Colorado limited liability company, by and through its

2    undersigned counsel, states and alleges as follows:

3                              **INTRODUCTION**

4        1.    Plaintiff Diablo Media, LLC ("Diablo") is an Internet advertising network.

5        2.    As an ad network, Diablo works with a roster of website and blog owners—

6    known in the industry as "publishers"—to drive potential consumers to its clients, which

7    are known as "advertisers."  The directed flow of consumers from publisher to advertiser

8    is commonly referred to within the business as Internet "traffic" or "leads," dependent on

9    the type of action or information ultimately sought from the consumer.

10       3.    Internet traffic often passes through several hands from its origination to

11   final destination and, as such, it is not uncommon for one ad network to serve as the

12   publisher or advertiser of another ad network.

13       4.    Defendant Reply! Inc. ("Reply") is also an ad network.  On information and

14   belief, Reply specializes in the purchase and sale of "targeted" traffic and leads—that is,

15   consumers who have already expressed a specific interest in the product or service

16   offered by the advertiser to which the lead is sold.

17       5.    Diablo and Reply have entered into two written agreements, and this case

18   concerns Reply's breach of each one.

19       6.    In the first agreement, Diablo agreed to sell traffic to Reply.  Reply has

20   breached this agreement by failing to pay Diablo over $115,000 pursuant to the

21   agreement, and by preventing Diablo from exercising its auditing rights under the

22   agreement.

23       7.    In the second agreement, Reply agreed to sell traffic to Diablo.  Reply

24   fraudulently induced Diablo to enter into this agreement by promising Diablo no payment

25   would be owed for up to eight (8) months.  Reply has breached this agreement by failing

26   to provide usable traffic to Diablo and by calling payment due before the expiration of the

27   eight-month period.

28   //

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1         8.     As a result of Reply's misconduct, Diablo has been harmed and continues to

2   be harmed.

3                                    **JURISDICTION AND VENUE**

4         9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because

5   the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

6   costs, and the action is between citizens of different states.  To wit, Reply is a citizen of

7   Delaware and California, and Diablo is a citizen of Colorado.

8         10.    Venue is proper under 28 U.S.C. § 1391 because Reply is located in this

9   judicial district and because this case arises out of a written agreement between the

10   parties that provides for adjudication in this district.

11         11.    This Court has personal jurisdiction over Reply because Reply is located in

12   San Ramon, California and because this case arises out of a written agreement between

13   the parties, which contains a California choice of law and forum selection clause.

14                                  **INTRADISTRICT ASSIGNMENT**

15         12.    Pursuant to Local Civil Rule 3-2(c), this action should be assigned to the

16   Oakland Courthouse because a substantial part of the events or omissions that gave rise

17   to the claims occurred in Contra Costa County.

18                                          **PARTIES**

19         13.    Plaintiff Diablo Media, LLC is a Colorado limited liability company with its

20   principal place of business located in Denver, Colorado.

21         14.    On information and belief, Defendant Reply! Inc. is a Delaware corporation

22   with its principal place of business located in San Ramon, California.

23                                  **FACTUAL ALLEGATIONS**

24                                **The Traffic Agreement**

25         15.    On or about July 25, 2011, Diablo and Reply entered into a written Traffic

26   Seller Agreement (the "Traffic Agreement"), a true and correct copy of which is attached

27   hereto as **Exhibit 1**.

28   //

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

16.     As is evident from the face of the Traffic Agreement, said Agreement was drafted by Reply.  On information and belief, the Traffic Agreement is a form agreement that Reply requires all publishers to sign.

17.     Under the Traffic Agreement, Diablo agreed to provide, and Reply agreed to buy, Internet traffic through a series of "Enhanced Clicks."  As explained in Paragraphs 1(a), 2, and 3 of the Traffic Agreement, an Enhanced Click is a customer lead that is transferred from Diablo to Reply, and subsequently sold by Reply to one of its advertiser clients, as follows:

     a. A customer visits a Diablo publisher website and clicks on a hyperlink presented by the publisher;

     b. The customer is redirected to Reply's system—that is, the customer is "received" by Reply—wherein the customer is asked to specify the type of service they are interested in receiving and, in some cases, the geographic location where they are looking to receive the service; and

     c. The customer is then transferred to a relevant Reply advertiser web page— that is, the customer is "sold" by Reply to its client.

18.     Under Paragraph 3 of the Traffic Agreement, Reply is required to pay Diablo "for all Enhanced Clicks$^{TM}$ that are received and sold by the System."

19.     As is common in Internet advertising, Diablo and Reply used "tracking pixels" to keep track of how many Enhanced Clicks sold by Reply originated from Diablo's publishers.

20.     A tracking pixel is a tiny image embedded into the code of a web page that informs the operators of the web page when it has been accessed—similar to a read receipt on an email.  In the Internet advertising industry, a pixel that has been accessed is commonly referred to as having been "fired."

21.     When Reply would receive an Enhanced Click from a Diablo publisher and sell it to a Reply advertiser, Diablo's pixels would fire, thereby incurring an obligation for Reply to pay Diablo for the Enhanced Click pursuant to the Traffic Agreement.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

22.     Paragraph 3 of the Traffic Agreement outlines Reply's invoicing and payment obligations as follows:

> Reply! will pay Publisher for all Enhanced Clicks$^{TM}$ that are received and sold by the System.  Each time Enhanced Clicks$^{TM}$ originating from Publisher are sold through the System, Publisher's account balance will be credited for the payment of the Enhanced Clicks$^{TM}$.  Within thirty (30) days of the end of each calendar month, Reply! will provide Publisher with (i) a report detailing the Enhanced Clicks$^{TM}$ that were received and sold through the System during the previous month, and (ii) a payment of any amounts owed to Publisher from the sale of Enhanced Clicks during the previous month, unless the overall account balance due to Publisher is less than $100, in which case the balance will roll forward to the next calendar month and will be paid once it reaches a minimum of $100 at the end of such calendar month.

23.     Paragraph 3 of the Traffic Agreement also outlines Reply's recordkeeping requirements and Diablo's right to an accounting or audit:

> Reply! shall maintain all necessary records during the term of this Agreement and for a period of one (1) year thereafter to permit Publisher to audit, at Publisher's sole cost and expense and not more than once per annum, Reply!'s records for the purpose of determining compliance with the payment terms provided in this Section 3 (the "Audit").  In the event the Audit discloses that Reply! underpaid Publisher in excess of ten percent (10%) during any calendar month during the term of this Agreement, Reply! shall, in addition to immediately correcting any underpaid amounts, reimburse Publisher for reasonable costs and expenses associated with such Audit.

24.     Paragraph 8 of the Traffic Agreement is entitled "Limitation of Liability" and includes a bar on consequential damages, stating "EACH PARTY WILL NOT BE LIABLE FOR ANY INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES (OR ANY LOSS OF REVENUE, PROFITS, OR DATA) ARISING IN CONNECTION WITH THIS AGREEMENT, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES."

25.     At all relevant times, Diablo performed its obligations as required under the Traffic Agreement.

//

//

26.     Diablo timely invoiced Reply for the following amounts due under the Traffic Agreement:

| Date of Invoice | Amount | Balance |
|---|---|---|
| August 31, 2013 | $34,399.21 | $34,399.21 |
| September 30, 2013 | $78,368.35 | $112,767.56 |
| October 31, 2013 | $3,031.40 | $115,798.96 |

27.     The foregoing invoices are for payments due for Enhanced Clicks delivered by Diablo to Reply and subsequently sold by Reply to its clients—that is, specifically for instances where Diablo's tracking pixels were fired.

28.     On September 6, 2013, Reply—acting through its agent and employee Chris Mancini ("Mancini")—contacted Diablo and requested that Diablo send *more* traffic to Reply, saying "We need lots of ford leads.  Quality not issue [sic]."

29.     Reply has refused, and continues to refuse, to pay Diablo for the amounts owed under the August, September, and October 2013 invoices, thereby breaching the Traffic Agreement.

30.     One reason Reply has provided regarding its refusal to pay Diablo is that the Enhanced Clicks provided by Diablo are "bad."  In response, Diablo has repeatedly requested that Reply provide the records necessary to perform a complete audit, but Reply has only provided a hand-picked selection of records that contain incomplete information and are largely for instances where Diablo's tracking pixel was not fired—that is, leads that are not the subject of the August, September, and October 2013 invoices.

31.     Reply has refused, and continues to refuse, to provide Diablo the information necessary to perform an audit, thereby breaching the Traffic Agreement.

**The Data Management Agreement**

32.     On or about July 31, 2013, Reply and Diablo entered into a written agreement for data management (the "Data Management Agreement"), a true and correct copy of which is attached hereto as **Exhibit 2**.

//

//

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

33.     The Data Management Agreement is similar to the Traffic Agreement, but includes a role reversal in that, in the Data Management Agreement, Reply agreed to provide Internet traffic to Diablo.

34.     The Data Management Agreement was instigated by Reply on July 26, 2013, only a few days prior to its effective date.

35.     In a series of written and oral communications by Mancini on behalf of Reply on July 29, 2013, Reply represented as follows: (1) that Reply needed the Data Management Agreement to be executed as soon as possible to have something to show to its board of directors; and (2) that, although the payment date in the agreement was listed as September 1, 2013, Reply would give Diablo up to eight (8) months to meet its payment obligations under the Data Management Agreement.

36.     In reliance on Reply's representation that Diablo would have up to eight months to make any payment under the Data Management Agreement, Diablo entered into the Data Management Agreement.

37.     Reply has failed, and continues to fail, to provide usable traffic or leads to Diablo, thereby breaching the Data Management Agreement.

38.     Reply did not demand payment under the Data Management Agreement on September 1, 2013, but now claims that payment is due and owing on that date.

39.     Had Diablo known that Reply would demand payment under the Data Management Agreement on September 1, 2013, Diablo would not have entered into the Data Management Agreement.

40.     On information and belief, Reply intentionally misrepresented to Diablo that Diablo could have up to eight months to make payment under the Data Management Agreement in order to induce Diablo to enter into said Agreement within a short timeframe, and thereby provide Reply with a $20,000 contract to show its board of directors at the close of July 2013.

//

//

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract)**

41.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 40.

42.     The Traffic Agreement is a valid and enforceable contract between Reply, on the one hand, and Diablo, on the other, and is supported by valuable consideration.

43.     The Data Management Agreement is a valid and enforceable contract between Reply, on the one hand, and Diablo, on the other, and is supported by valuable consideration.

44.     Diablo has fulfilled all of its obligations under the Traffic Agreement.

45.     Reply has materially breached, and continues to breach, the Traffic Agreement by failing to honor its terms, including by failing to pay Diablo amounts owed pursuant to the Traffic Agreement, and by refusing to permit Diablo to conduct an audit.

46.     Reply has also materially breached, and continues to breach, the Data Management Agreement by failing to provide usable traffic or leads to Diablo.

47.     As a direct and proximate result of Reply's material breaches of the Traffic Agreement and the Data Management Agreement, Diablo has been damaged in an amount exceeding $115,000 and to be proven at trial.

**SECOND CLAIM FOR RELIEF**

**(Fraudulent Inducement)**

48.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 40.

49.      On or about July 29, 2013, and prior to the execution of the Data Management Agreement, Reply's representative, on behalf of Reply, knowingly made false misrepresentations to Diablo in the process of negotiating the terms of the Data Management Agreement.  Specifically, Reply's representative Mancini represented that although the payment date in the agreement was listed as September 1, 2013, Reply



KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1  would give Diablo up to eight (8) months to meet its payment obligations under the Data

2  Management Agreement.

3      50.    Reply knew that the foregoing misrepresentations were false when made

4  and that Reply intended to enforce the September 1, 2013 payment date against Diablo

5  and did, in fact, attempt to enforce it.

6      51.    Reply intended to induce reliance by Diablo on the misrepresentations.

7  Specifically, Reply intended to induce Diablo to enter into the Data Management

8  Agreement before the close of July 2013, with a payment date of September 1, 2013,

9  even though Reply knew Diablo believed it would have up to eight (8) months to meet its

10  payment obligations.

11      52.    Diablo did not discover the false nature of Reply's representations or

12  omissions until mid-October 2013, when Reply demanded immediate payment under the

13  Data Management Agreement.

14      53.    As a direct and proximate result of Reply's misrepresentations, Diablo has

15  suffered damages to be proven at trial.

16      54.    Reply's misrepresentations to Diablo, as set forth above, were made

17  purposefully, with fraudulent intent, and without regard for the rights and interests of

18  Diablo, thereby entitling Diablo to an award of exemplary and punitive damages as to

19  Reply in an amount sufficient to deter its wrongful conduct.

20                              **THIRD CLAIM FOR RELIEF**

21                                **(Declaratory Relief)**

22      55.    Plaintiff incorporates by reference the allegations contained in paragraphs 1

23  through 40.

24      56.    A present and actual controversy exists between Reply, on the one hand,

25  and Diablo, on the other, relating to their respective legal rights and duties under the

26  Data Management Agreement.

27      57.    Specifically, Diablo contends that (1) by separate agreement of the parties,

28  payment by Diablo was not due under the Data Management Agreement until eight (8)

Case No. 4:13-cv-05382                 8              **COMPLAINT**

1   months after its effective date, and (2) Reply has a duty under the Data Management

2   Agreement to provide usable traffic and leads to Diablo.

3       58.   On information and belief, Reply disputes Diablo's contentions.

4       59.   Diablo requires a judicial declaration that (1) by separate agreement of the

5   parties, payment by Diablo was not due under the Data Management Agreement until

6   eight (8) months after its effective date, and (2) Reply has a duty under the Data

7   Management Agreement to provide usable traffic and leads to Diablo.

8                         **PRAYER FOR RELIEF**

9   **WHEREFORE**, Plaintiff respectfully requests judgment as follows:

10      1.   That the Court enter a judgment in favor of Plaintiff and against Defendant,

11  finding that Defendant has:

12          a.  Breached the Traffic Agreement;

13          b.  Breached the Data Management Agreement; and

14          c.  Fraudulently induced Diablo to enter into the Data Management

15             Agreement;

16      2.   That the Court award damages and monetary relief as follows:

17          a.  Damages of a compensatory and general nature, in an amount as

18             alleged and demanded above and according to proof at trial;

19          b.  Punitive damages, where applicable;

20          c.  Costs of suit; and

21          d.  Reasonable attorneys' fees pursuant to the Traffic Management

22             Agreement;

23      3.   That the Court issue a declaratory judgment that (1) by separate agreement

24  of the parties, payment by Diablo was not due under the Data Management Agreement

25  until eight (8) months after its effective date, and (2) Reply has a duty under the Data

26  Management Agreement to provide usable traffic and leads to Diablo; and

27  //

28  //

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1        4.       Such other relief that the Court determines is just and proper.

2

3    Respectfully Submitted,

4    DATED:  November 20, 2013           **KRONENBERGER ROSENFELD, LLP**

5

6                                      By:   s/ Virginia Sanderson

7                                             Virginia Sanderson

8                                      Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1  **REQUEST FOR JURY TRIAL**

2  Plaintiff hereby demands a trial of this action by jury.

3

4  DATED:  November 20, 2013          **KRONENBERGER ROSENFELD, LLP**

5

6  By:   s/ Virginia Sanderson
                              Virginia Sanderson

7

8  Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108